J-S73015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
OMAR ANGELERO COLON, JR. :
:
Appellant : No. 621 MDA 2017

Appeal from the Judgment of Sentence March 7, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003592-2016,
CP-36-CR-0006001-2015

BEFORE: OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.: **FILED APRIL 02, 2018**

Appellant, Omar Angelero Colon, Jr., appeals from the judgment of
sentence entered on March 7, 2017. We affirm.

The trial court ably summarized the underlying facts and procedural
posture of this case. As the trial court explained:

> On November 9, 2015, Josh Domena was waiting for his
> girlfriend, Mariah Griffy, while talking to her mother, Sherry
> Griffy, on the back porch of the Griffys' house [in Ephrata,
> Pennsylvania]. Sherry shared the home with Mariah, her
> daughter Gina Griffy, and [Appellant]. While they were on
> the porch, Mr. Domena was "talking smack" to Sherry about
> [Appellant]. [Appellant] overheard the conversation from
> inside the house, and came out onto the porch to confront
> Mr. Domena. After a brief argument, [Appellant] hit Mr.
> Domena on the back, and Mr. Domena hit him back. After
> they each struck each other once, [Appellant] went back
> into the house. While he was inside, Mr. Domena heard
> [Appellant] "rack" a gun, before returning to the rear porch
> with a black and silver handgun in his hand. [Appellant]
> then verbally threatened to shoot Mr. Domena, who

_____
* Retired Senior Judge assigned to the Superior Court.

responded with a threat of his own before walking away down an alley. While in the alley, Mr. Domena stopped a car Mariah Griffy was driving and got [inside the vehicle]. Ms. Griffy then drove them back to the house. When they arrived, Mr. Domena got out of the car and walked toward the house. At the same time, [Appellant] was walking toward a parked, silver Audi sedan. As they passed each other, the men got into another argument before walking away in opposite directions - [Appellant] toward the silver Audi and Mr. Domena toward the house. [Appellant's] gun was not visible during this exchange. While Mr. Domena was still walking to the house, however, [Appellant] entered the silver Audi, emerged with a gun, and fired it in Mr. Domena's direction before fleeing the scene in the vehicle. The bullet did not hit Mr. Domena, but struck a nearby [cinderblock] garage wall.

After the gunshot, Mariah Griffy dialed [911]. Officer Michael Andrew Orwig was the first [officer on] scene, arriving at 12:30 [p.m.], around 20 [to] 30 minutes after the shot was fired. Five minutes later, at 12:35 [p.m.], Officer Matthew Bender, who was stopped as part of a speed trap along Route 222 near its intersection with Route 30, was informed by another officer, Sergeant Pia Santina, that a silver Audi sedan was [traveling] toward him at [74] miles per hour in a [55-mile-per-hour] zone. When the silver Audi passed him about ten seconds later, [Officer Bender] activated his lights and siren[], exited the shoulder, and caught up to the vehicle. In response, the silver Audi pulled over and slowed to a stop on the right shoulder, followed by Officer Bender. About [15] seconds after stopping, and just after Officer Bender entered the silver Audi's license plate number into the "mobile cop" system, the vehicle [re-entered] the roadway at a high rate of speed. In doing so, the silver Audi passed at least one other vehicle on the right shoulder. Having only pulled the vehicle over for speeding, Officer Bender reported the activity and the license plate, but did not continue the pursuit. The mobile cop system indicated that the vehicle belonged to Gina Mariah Griffy. . . .

Later that afternoon, back at the Griffys' residence, the area had been secured with police tape, and Sergeant Eric Schmitt, an experienced forensic examiner with training in

bullet striking, photographed the scene. Amongst Sergeant Schmitt's photos was a silver Audi sedan with a missing license plate that was parked in a stone lot directly behind the house. This silver Audi was the same vehicle that Officer Bender had briefly pulled over earlier that day, as determined by the VIN number which was visible through the windshield.

After photographing the scene, Sergeant Schmitt attempted to locate the bullet and determine where it had struck. While Sergeant Schmitt was searching for the bullet with a metal detector, another officer, Lieutenant Shumaker, happened to notice the spent, deformed bullet lying at the edge of the crime scene. Sergeant Schmitt then re-photographed the entire area, placing "scales in the screen to show where the bullet was located in reference to the cinderblock garage that was at the scene." Consistent with standard practice, Sergeant Schmitt then placed the deformed[] bullet in a small jewelry box with cotton to preserve it for evidence. Next, Sergeant Schmitt surveyed the cinderblock garage to determine exactly where the bullet had struck, locating a chip in the corner of the garage that was probably caused by the bullet strike. Sergeant Schmitt also had Mr. Domena stand where he was when the shot was fired. The resulting measurements indicat[ed] that the bullet struck about four feet, ten inches above the ground, and approximately eight feet behind where Mr. Domena was standing.

Charges were filed and a warrant was issued for [Appellant's] arrest the day of the incident, but [Appellant] was not apprehended until December 10, 2015, when he was arrested by Lancaster City Police. After [Appellant] was arrested, he was transported to the Ephrata Police Department to be processed on his criminal charges, and to then be transported to arraignment. . . .

Detective Kenneth D. Lockhart, Jr., the lead investigator on the case, was notified of [Appellant's] arrest, and credibly testified at the Suppression Hearing that he then went to the processing room to see if [Appellant] was willing to schedule an interview about the incident. Carrying no weapon, Detective Lockhart entered the processing room[] and calmly stated that he was the police officer who filed

the complaint and that he wanted to talk to [Appellant] about the incident. [Appellant] responded immediately with the following: "I don't know what this is about. I didn't shoot at anybody, it was a firecracker. . . . They're not going to testify anyway." . . .

In addition to th[is statement] to Detective Lockhart, while in prison, [Appellant] mailed between [15] and [20] letters. Detective Lockhart read one of these letters to the jury at trial – it was addressed to Mariah Griffy, and asked that she read certain portions to Mr. Domena. These portions asked Mr. Domena not to testify against [Appellant], that [Mr. Domena] alternatively [invoke his Fifth Amendment right to not incriminate himself], or that he change his story to protect [Appellant]. The Commonwealth introduced the following evidence linking [Appellant] to the letter: Detective Lockhart testified that he intercepted the letter from the inmate mail, the letter contained [Appellant's] prison identification number, the text matched other samples of [Appellant's] handwriting, and the Commonwealth played portions of recorded prison calls for the jury in which [Appellant] asked Mariah Griffy on multiple occasions if she received his letters.

. . . [Appellant] was charged with [] simple assault[,] carrying a firearm without a license[,] recklessly endangering another person[,] solicitation of perjury[, and] . . . fleeing or attempting to elude a police officer.[1] [Following trial,] the jury found [Appellant] guilty of all but the fleeing or attempting to elude a police officer charge. After the jury trial, [the trial court] found [Appellant] guilty of [person not to possess firearms].[2] . . .

[On March 7, 2017, the trial court] sentenced [Appellant] to [an] aggregate sentence of six to [15] years' incarceration [for his convictions]. . . .

---

[1] 18 Pa.C.S.A. §§ 2701(a)(3), 6106(a)(1), 2705, and 4902(a), and 75 Pa.C.S.A. § 3733, respectively.

[2] 18 Pa.C.S.A. § 6105(a)(1).

Trial Court Opinion, 6/15/17, at 1-6 (internal citations, corrections, and footnotes omitted) (some internal quotations and capitalization omitted).

Appellant filed a timely notice of appeal. He raises three claims to this Court:

> [1.] Did the trial court err in denying [Appellant's] motion to suppress where the detective subjected [Appellant] to a custodial interrogation without advising [Appellant] of his ***Miranda***[3] rights?
>
> [2.] Did the trial court err in denying [Appellant's] motion for judgment of acquittal regarding the recklessly endangering another person charge . . . where the Commonwealth failed to produce any evidence that showed [Appellant] placed another person in danger of death or serious bodily injury?
>
> [3.] Did the trial court err in denying [Appellant's] motion for judgment of acquittal regarding the solicitation to commit perjury charge . . . where the Commonwealth failed to produce any evidence that [Appellant] commanded, encouraged[,] or requested Mr. Domena to make a false statement under oath in any official proceeding?

Appellant's Brief at 5 (some internal capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Jeffery D. Wright. We conclude that there has been no error in this case and that Judge Wright's opinion, entered on June 15, 2017, meticulously and accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Wright's thorough

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Wright's opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Dubow joins the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/2/2018